FILED
2020 AUG 14 PM 12:05
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LESLIE ANDERSON, SURVIVING SPOUSE OF JERRY ANDERSON, DECEASED PLAINTIFF,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | Case #4:19-cv-00067-PK<br><br>MEMORANDUM DECISION AND ORDER REMANDING THE COMMISSIONER'S FINAL DECISION |

This Social Security disability appeal is before the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security.  Plaintiff, Leslie Anderson, the surviving spouse of deceased plaintiff, Jerry Anderson ("Mr. Anderson") seeks review of the administrative law judge ("ALJ") decision denying his claim for Disability Insurance Benefits ("DIB"), as well as Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. After review and oral argument, the Court reverses and remands the Commissioner's final decision denying Mr. Anderson's claim for disability benefits for further consideration.

## I.    BACKGROUND

Mr. Anderson was born with congenital deformities. (Tr. 923).  Mr. Anderson was missing the phalanx bone on all digits of his right hand and also on his left ring finger and little finger, had aphalangia of his left foot and his right leg was shorter than the left with a club foot

1

(Tr. 923, 928).  Mr. Anderson also has a history of back pain resulting in reduced range of motion (Tr. 333).  Imaging showed moderate to severe central canal stenosis at L4-L5 and multilevel neural foraminal narrowing throughout the lumbar spine (Tr. 335, 397, 488-489). Mr. Anderson also had neck pain and decreased range of motion in the cervical spine (Tr. 476).

Imaging done prior to the onset date also showed degenerative arthritis of the left shoulder joint (Tr. 466). Mr. Anderson underwent surgery for this impairment (Tr. 477).

Mr. Anderson also began reporting increasing respiratory issues and increasing reliance on a rescue inhaler (Tr. 448). In July 2016, Mr. Anderson was hospitalized with pneumonia, sepsis, and renal failure (Tr. 790-793, 809-811). A brain CT done at this time showed bilateral frontal and right frontal-parietal atrophy (Tr. 812). He was hospitalized again in November 2016 for exacerbation of his respiratory issues (Tr. 901, 904).

In March 2016, Mr. Anderson underwent a consultative exam.  The exam showed he had moderate atrophy of the right lower extremity with reduced strength (Tr. 690). The right leg was one centimeter shorter than the left leg (Tr. 691).  He had reduced range of motion in the right leg and a clubbed foot deformity (Tr.691). He was missing portions of his fingers on the right hand and was unable to make a fist with his right hand (Tr. 691).  The examining physician opined that Mr. Anderson would be limited in his ability to lift, carry, and handle heavy weight (Tr. 692).  He would be limited in the ability to perform tasks that require repetitive motion and dexterity of his right hand, to frequently crawl, crouch, or stoop, to frequently bend or twist or to frequently climb stairs or ladders (Tr. 692).

Mr. Anderson was diagnosed with depression and anxiety and placed on medication by his treating physician (Tr. 636). Mr. Anderson began seeing a counselor who noted dysthymic mood and difficulty concentrating with some memory lapses (Tr. 648, 650). The record shows that Mr. Anderson continued to report issues with depression and anxiety and had to have medication changes due to side-effects from these medications including daytime somnolence (Tr. 880-882, 896).

At the hearing, Mr. Anderson testified the only formal training he received was CDL training in 2010 (Tr. 55). His previous work was in construction (Tr. 56-64). He can no longer work because of his impairments, particularly his back impairments (Tr. 65-66). He also has foot and hand impairments that have kept him from working (Tr. 66). He has cut down on smoking and tried to lose weight by changing his diet (Tr. 70-71).

Mr. Anderson testified that he drives mostly short distances, goes grocery shopping for 30 minutes once a month, and tries to help out around the house by letting the dogs out, helping cook dinner, and helping with laundry (Tr. 72-73). Things like sweeping and mopping hurt his back (Tr. 75). He gets intense muscle spasms in his lumbar spine that cause pain on a daily basis (Tr. 75). He can walk about 25 yards and has to sit on the benches during his monthly Walmart shopping trip (Tr. 79). If he lifts more than 10 pounds it hurts his back (Tr. 86).

In his decision, the ALJ found that Mr. Anderson had the severe impairments of disorder of the lumbar spine, disorder of the right hand and right foot, disorder of the left shoulder status post SLAP repair, chronic obstructive pulmonary disease ("COPD"), and obesity (Tr. 31). At step three, he found that Mr. Anderson did not meet a listing (Tr. 33). The ALJ found that Mr.

Anderson could perform light work except: he can perform all postural maneuvers only occasionally, he is limited to frequent but not continuous overhead reaching with his dominant left upper extremity and only occasionally fingering and handling with his non-dominant right upper extremity, he must avoid concentrated exposure to cold, chemicals, and pulmonary irritants such as smoke, dust, fumes, odors, gases, and poorly ventilated areas, and finally he must avoid concentrated exposure to hazardous machinery, unprotected heights, and operational control of moving machinery (Tr. 33).  The ALJ found that with this RFC, Mr. Anderson was unable to perform any past relevant work (Tr. 38).  However, he found there was other work available in the national economy that Mr. Anderson could perform (Tr. 38-39).  Therefore, he found that he was not disabled.  (Tr. 40).

## II.    ARGUMENT ON APPEAL

On appeal, Mr. Anderson argued that the ALJ erred in his evaluation of the medical opinion evidence.  Mr. Anderson also alleged that the Appeals Council erred by failing to consider imaging of his cervical spine submitted after the ALJ decision.  As discussed below, the Court ultimately finds that the ALJ evaluation of the medical opinion evidence is supported by substantial evidence.  However, the Appeals Council erred by finding that the cervical MRI did not relate to the relevant period.

## III.    STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)(citation omitted).

4

The ALJ's findings "shall be conclusive" if supported by substantial evidence. 42 U.S.C. § 405(g); *see also Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  Substantial evidence is "more than a mere scintilla [;]" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971)(quotation and citation omitted). When reviewing the record, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

A "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine the appropriated legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1164-1165 (10th Cir. 2005)(quotations and citation omitted).

## IV.   DISCUSSION

### 1.   Evaluation of Mental Impairments

Mr. Anderson first argues that the ALJ failed to properly evaluate the severity of his mental impairments (Dkt. 20 at 7-8).  Mr. Anderson submitted medical records from his treating physician, Dr. Garon Coriz, diagnosing depression and anxiety and showing consistent treatment of these conditions with medication (Tr. 898).  Dr. Coriz administered the GAD-7 scale for anxiety and found that Mr. Anderson had "moderate" anxiety (Tr. 898).  The record also contained records from Mr. Anderson's treating therapist, Milo Garcia (Tr. 648-650). The record also referred to memory lapses and difficulties concentrating (*Id.*).

The Commissioner argues that the ALJ properly found Mr. Anderson's mental impairments were non-severe because his diagnosis by an acceptable medical source was based

only on Mr. Anderson's subjective symptoms and is not consistent with the record (Dkt. 25 at 10). The Commissioner argues that Dr. Coriz made no abnormal findings other than his finding of moderate anxiety based on Mr. Anderson's answers to the GAD-7 (*Id.*). The Commissioner notes that this scale is based on a patient's self-reported symptoms and that the Agency may not use a claimant's statement of symptoms to establish the presence of a medically determinable impairment (Dkt. 25 at 10, fn.4 citing to 20 C.F.R. § 404.1521). This Court finds the Commissioner's argument persuasive. Dr. Coriz's findings were consistently normal, as were findings regarding Mr. Anderson's mental impairments from other providers (Tr. 369, 389, 399, 407, 539, 857, 859, 857-902). Furthermore, Mr. Anderson stopped seeing his counselor in December 2015 and did not have any abnormal mental status findings during the relevant period (*see* Tr. 648). Therefore, this Court finds there is no error in the ALJ's finding that Mr. Anderson's mental impairments were non-severe.

### 2. Evaluation of MRI by Appeals Council

After the ALJ decision was issued, Mr. Anderson underwent an MRI of the cervical spine. (Tr. 16-17). This report showed "advanced arthritic changes" to the cervical spine (Tr. 16). More specifically, it showed:

1) C2-C3: Severe left neural foraminal stenosis where the nerve root exits with mild compression. Moderate right neural foraminal stenosis.

2) C3-C4: Severe bilateral neural foraminal stenosis with near effacement on the left. Severe nerve root compression on the right.

3) C4-C5: Severe bilateral neural foraminal stenosis with severe nerve root compression.

4) C5-C6: Severe bilateral neural foraminal stenosis compresses the exiting nerve root on the left. The right nerve root appeared atrophied.

5) C6-C7: Severe bilateral neural foraminal stenosis compresses the exiting nerve roots, severe on the left.

6) C7-T1: Severe right neural foraminal stenosis mildly compresses the exiting nerve root. The report concluded that this would likely cause pain (Tr. 16-17).

Mr. Anderson submitted this report to the Appeals Council. The Appeals Council declined to review this evidence stating:

You submitted medical records from Mountain Utah Family Medicine dated October 29, 2018 (2 pages). The Administrative Law Judge decided your case through July 6, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 6, 2018 (Tr. 2).

Mr. Anderson argues that 20 C.F.R. §§ 404.970(b) and 416.1470(b) expressly authorize a claimant to submit new and material evidence to the Appeals Council when seeking review of the ALJ's decision. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). If the evidence "relates to the period on or before the date of the [ALJ] hearing decision" the Appeals Council "shall evaluate the entire record including any new and material evidence submitted …[and] then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b) and 416.1470(b). The new evidence becomes part of the administrative record that the Court must consider when evaluating the Commissioner's decision for substantial evidence. *O'Dell* at 859.

The Commissioner argues that the Appeals Council did not have to review the MRI evidence submitted because it did not relate to the relevant period. (Dkt. 25 at 11-15). However,

7

this Court finds that the record did contain evidence of neck pain and cervical strain during the relevant period. First, it is important to note that the ALJ acknowledged neck pain in his decision (Tr. 34, 35). The record also contains at least the following references to neck pain:

1) A note from March 2014 shows Mr. Anderson was treated for cervical strain (Tr. 472-476).

2) A noted from September 2015 notes under "Problems", cervical strain (Tr. 449).

3) A note from January 28, 2016 notes cervical strain (Tr. 641).

4) A note from February 2, 2016 notes "pain is located in the low back, neck" (Tr. 404). It was noted at this appointment that "[m]ost of the pain is in the neck due to MRSA boil" (Tr. 407).

5) A note date February 29, 2016 states "pain is located in the low back, neck" (Tr. 396).

6) A noted from July 26, 2016 notes that cervical strain is an active problem (Tr. 841).

7) A noted from December 5, 2016 notes Under Problem List/Medical History, cervical strain (Tr. 898).

8) The MRI from October 2018 shows neck pain as the reason for the MRI (Tr. 16).

The record is consistent in showing that Mr. Anderson had cervical pain throughout the relevant period. Therefore, the Commissioner's argument that the Appeals Council did not have to evaluate an MRI showing severe, degenerative changes just a few months after his hearing, fails and this case must be reversed and remanded for further consideration of this evidence.

## **ORDER**

Under the relevant standard of review, the Court finds that the Appeals Council evaluation of the cervical MRI is contrary to Agency rulings and regulations and is not supported by substantial evidence. Accordingly, for the reasons set forth above, the Court REVERSES and

REMANDS this matter to the Commissioner for further proceedings consistent with this

Memorandum Decision and Order.

So ordered this 14th day of August, 2020.

Paul Kohler
United States Magistrate Judge

9